UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTONIO HARRIS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-829-RLM-MGG |
| GEORGE PAYNE, et al., | |
| Defendants. | |

OPINION AND ORDER

Antonio Harris, a prisoner without a lawyer, filed an amended complaint alleging that he has repeatedly been assaulted at Miami Correctional Facility, and the defendants have failed to protect him. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Harris alleges that he was stabbed by multiple inmates on January 4, 2020, and placed on protective custody status. Mr. Harris was placed in a cell in a

different area[1] of the prison, but the inmates who attacked him were in the same area, and Mr. Harris received threats from those inmates. Mr. Harris told defendant Officer Angle that "there will be problems" with this arrangement, but Officer Angle "neglected [his] call for help."

Mr. Harris repeatedly asked to be moved, and "notified all counsel and administration" about his request, including Warden William Hyatte. He asked Ms. Jones, a mental health worker at the prison, if she could request a transfer on his behalf, but she told him that "mental health does not address safety concerns and cannot do bed moves or transfers."

On July 14, 2020, Mr. Harris told deputy warden George Payne that he was a target for the other inmates, and asked to be moved, but Mr. Payne told him to make a written request. Mr. Harris told Mr. Payne that would take too long, and he "needed help ASAP." Roughly seven hours later, defendant Officer Shaw "opened 10 doors when only 5 were to be opened at once." Mr. Harris was attacked and repeatedly stabbed by the inmates he had previously identified.

Mr. Harris sues five defendants, alleging that they failed to protect him from the July 14 attack. Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008). A claim that an officer failed to protect a prisoner from assault cannot be predicated "merely on knowledge of general risks of violence in a

---

[1] Although Mr. Harris says he was moved to a "dorm," there were locked doors separating him from the inmates who threatened him.

detention facility." Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005). The plaintiff must show that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Santiago v. Wells, 599 F.3d 749, 756 (7th Cir. 2010). General statements that a prisoner fears being attacked, or wants to be moved elsewhere, are insufficient unless the prisoner describes who is threatening him and the basis for the threat. Klebanowski v. Sheahan, 540 F.3d 633, 639-40 (7th Cir. 2008).

The events described by Mr. Harris don't state a claim upon which relief can be granted against Mr. Payne or Officer Angle. When these officers spoke to Mr. Harris, he was on protective custody status, held in a different cell than his attackers. Although Mr. Harris repeatedly asked to be moved, and said that he was "a target" and "there will be problems," it isn't clear how the officers would have had actual knowledge of impending harm to him while he was in protective custody.[2] Mr. Harris hasn't raised a plausible inference that the officers showed deliberate indifference to his safety. It's not enough for Mr. Harris to say that he was getting threats – to state a claim, Mr. Harris would have to plead facts showing how the officers would know that protective custody was not enough to protect him from the attackers.

---

[2] Similarly, Mr. Harris's statement to Mr. Payne that he "needed help ASAP" does not sustain a claim, because it does not explain how Mr. Payne would know the attackers could get to Mr. Harris while he was in protective custody.

3

Mr. Harris hasn't stated a claim on which relief can be granted against the remaining defendants. Mr. Harris says he "notified all counsel and administration" about his circumstances.

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients That can't be right.

Burks v. Raemisch, 555 F.3d 592, 593 (7th Cir. 2009). That Mr. Harris notified other people doesn't make them proper defendants unless they were directly involved. Mr. Harris says Warden William Hyatte was "made aware of the situation" many times. He alleges that he asked Ms. Jones, a mental health worker, if she could request a transfer for him, but she told him the mental health unit couldn't organize transfers. Nothing in the complaint indicates that either defendant was directly involved with placing Mr. Harris. "The most one can say is that [they] did nothing, when [they] might have gone beyond the requirements of [their] job and tried to help him." *Id.* at 596. This doesn't state a claim under section 1983. *Id.*

Nor has Mr. Harris stated a claim against Officer Shaw, the officer who allegedly opened the doors when he was assaulted. Mr. Harris alleges that Officer Shaw opened ten doors in the unit, when only five were supposed to be opened at a time. He makes no other specific allegations against Officer Shaw. Even assuming Officer Shaw was among the "counsel and administration" Mr. Harris notified about his issues, the complaint doesn't support an inference of Officer Shaw's deliberate

4

indifference to his safety. Opening ten doors rather than five might have increased the general risk that something could happen to Mr. Harris, but Mr. Harris alleges no facts suggesting that opening a certain number of doors was a "conscious, culpable" decision by Officer Shaw to ignore a specific threat to Mr. Harris.

Mr. Harris also asks to be "transferred to a safer prison." Injunctive relief is only appropriate for violations that are ongoing. Mr. Harris's complaint, filed January 13, 2021, does not contain any allegations about his status after the July 14, 2020 incident. He hasn't pleaded facts that raise an inference of an ongoing threat against him requiring injunctive relief.

As it stands, Mr. Harris's amended complaint doesn't contain a plausible constitutional claim against any defendant. In the interest of justice, the court will give him a final chance to file another amended complaint. *See* Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018).

For these reasons, the court GRANTS the plaintiff until **April 22, 2021**, to file an amended complaint. If Mr. Harris doesn't respond by the deadline, the case will be dismissed pursuant to 28 U.S.C. § 1915A, because the current complaint does not state a plausible claim for relief against any defendant.

SO ORDERED on March 26, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
