UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTONIO HARRIS,

    Plaintiff,

    v.                               CAUSE NO. 3:20-CV-829-RLM-MGG

GEORGE PAYNE, et al.,

    Defendants.

OPINION AND ORDER

Antonio Harris, a prisoner without a lawyer, was granted until April 22 to file an amended complaint because the court determined that the complaint he originally filed didn't state a claim upon which relief could be granted. ECF 14. The court dismissed the case when Mr. Harris didn't respond by the deadline. ECF 15. The court reopened the case after Mr. Harris sent the court a letter, and gave him more time to file an amended complaint. ECF 18. Mr. Harris filed an amended complaint, ECF 19, and it is ready to be screened. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A.

In his original complaint, Mr. Harris alleged that he was in protective custody status after multiple inmates stabbed him in January 2020, but the inmates who attacked him were also housed in the same range. ECF 14 at 1. On July 14, 2020, he told deputy warden George Payne that he was a target for the other inmates and asked to be moved, but Mr. Payne didn't move him immediately, instructing him instead to make a written request. *Id.* at 2. Later that day, Mr. Harris was attacked after Officer Shaw opened ten cell doors at once, instead of five, and let out more prisoners than he should have. *Id.*

The court concluded that Mr. Harris didn't state a claim upon which relief can be granted. As to Mr. Payne, the court noted that when he spoke to Mr. Harris,

> [Mr. Harris] was on protective custody status, held in a different cell than his attackers. Although Mr. Harris repeatedly asked to be moved, and said that he was 'a target' and 'there will be problems,' it isn't clear how the officer[] would have had actual knowledge of impending harm to him while he was in protective custody.

ECF 14 at 3. The court concluded that Mr. Harris hadn't pleaded "facts showing how the officer[] would know that protective custody was not enough to protect him from the attackers." *Id.*

The court concluded that Mr. Harris's allegation that Warden Hyatt was "made aware of the situation" many times wasn't enough to show he was personally involved with Mr. Harris's placement, ECF 14 at 4, so he couldn't be held liable under 42 U.S.C. § 1983. *Id.*

Finally, the court concluded that, even assuming Officer Shaw was aware of Mr. Harris's security issues, "the complaint doesn't support an inference of Officer Shaw's deliberate indifference to his safety. Opening ten doors rather than five might

2

have increased the general risk that something could happen to Mr. Harris, but Mr. Harris alleges no facts suggesting that opening a certain number of doors was a 'conscious, culpable' decision by Officer Shaw to ignore a specific threat to Mr. Harris." ECF 14 at 4-5.

Mr. Harris's amended complaint doesn't fix the issues identified in the initial complaint. General statements that a prisoner fears being attacked, or wants to be moved elsewhere, are insufficient unless the prisoner describes who is threatening him and the basis for the threat. Klebanowski v. Sheahan, 540 F.3d 633, 639-640 (7th Cir. 2008). Mr. Harris's basic claim is that prisoners who shouldn't have been let out of their cells attacked. Thus, his placement was safe but for the violation of policy. The amended complaint doesn't say how either the warden or deputy warden could have known ahead of time that the extra cells would be opened, thereby placing Mr. Harris in danger.

As to Officer Shaw, the amended complaint says that the day of the attack, Mr. Harris asked him for a protective custody form and told him "that I needed to be moved ASAP." ECF 19 at 2. Yet, Mr. Harris has not connected his general desire to be moved to a specific threat of which Officer Shaw was aware. Mr. Harris alleges that in the investigation following the attack, Officer Shaw lied and denied opening ten cells at once. Mr. Harris says this is evidence that Officer Shaw opened the extra cells on purpose. The missing link is whether Officer Shaw knew that the extra-opened cells had prisoners in them who posed a threat to Mr. Harris. Mr. Harris provides no basis for the court to reasonably infer that Officer Shaw purposely

intended for his actions to result in the attack. Nor is there a basis to reasonably infer that Officer Shaw was otherwise aware that the prisoners in those cells posed a particular risk to Mr. Harris.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id*. Therefore, a claim cannot be based "merely on knowledge of general risks of violence in a detention facility." Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005). In Klebanowski v. Sheahan, the court of appeals explained that a prior attack combined with fear of a future attack and a desire to move to a different housing unit were insufficient to demonstrate deliberate indifference on the part of prison officials who didn't relocate the inmate.

> The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

Klebanowski v. Sheahan, 540 F.3d at 639-40 (footnote omitted). Mr. Harris's amended complaint repeats general fears for his safety from the inmates who had attacked him before, but he doesn't identify a specific threat that would put any defendant on notice of a need to act.

4

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." <u>Abu-Shawish v. United States</u>, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." <u>Hukic v. Aurora Loan Servs.</u>, 588 F.3d 420, 432 (7th Cir. 2009). Mr. Harris was told twice that he needed to lay out the details of how Mr. Payne or Warden Hyatte "would have had actual knowledge of impending harm to him while he was in protective custody," ECF 14 at 3; ECF 18, and how Officer Shaw's decision to open ten doors rather than five "was a 'conscious, culpable' decision by Officer Shaw to ignore a specific threat to Mr. Harris," ECF 14 at 5; ECF 18. Another attempt isn't warranted here.

For these reasons, this case is DISMISSED pursuant to 28 U.S.C. § 1915A because the amended complaint does not state a claim upon which relief may be granted. The clerk is DIRECTED to close the case.

SO ORDERED on September 1, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT